United States District Court
Southern District of Texas
**ENTERED**
August 04, 2022
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| OGOCHUKWO J. OKWO, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-21-4063 |
| | § | |
| HOUSTON METHODIST THE | § | |
| WOODLANDS, et al., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

In May 2022, the court dismissed all of Ogochukwo J. Okwo's claims against Houston Methodist The Woodlands Hospital, which included claims under the Fair Credit Reporting Act and Title VII. The court dismissed some of Okwo's claims against Cargo Group, Inc., doing business as PreCheck, which included certain claims under the Fair Credit Reporting Act,15 U.S.C. § 1681n, § 1681h(e), and claims under Title VII. (Docket Entry No. 26). The dismissal was without prejudice and with leave to file an amended complaint. (*Id.*). Okwo has filed an amended complaint, asserting many of the same claims. (Docket Entry No. 27). Houston Methodist and PreCheck have again moved to dismiss, Okwo has responded, and Houston Methodist and PreCheck have replied. (Docket Entry Nos. 28, 30, 32, 33, 34).

After careful consideration of the pleadings, the parties' arguments, and the applicable law, the court grants Houston Methodist's and PreCheck's motions to dismiss. Because the court has already granted Okwo leave to amend his complaint, and his amended complaint failed to cure the identified deficiencies, the dismissal is with prejudice. Further leave to amend would be futile. Final judgment is entered by separate order.

The reasons are explained below.

## I.    Background

Because the defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), this court accepts as true the complaint's well-pleaded factual allegations. *Ashcroft v. al-Kidd*, 563 U.S. 731, 734 (2011).

On November 2, 2020, Ogochukwo J. Okwo received a conditional offer from Houston Methodist for a medical technologist position that would start on November 30, 2020. (Docket Entry No. 27 at ¶¶ 3.1, 5.3). One of the conditions for the offer was the "successful completion of a criminal and education background check." (*Id.* at ¶ 3.1). Okwo authorized Houston Methodist to conduct the background check through PreCheck, Inc., a records search provider. (*Id.* at ¶¶ 3.1, 4.2, 4.3, 6.2–6.5).

When Okwo applied for the position, he was asked whether he had been convicted of a felony. (*Id.* at ¶ 5.1). When he received the conditional offer of employment and had to fill out employee information and onboarding documents, he was asked whether he had been convicted of, or had pleaded guilty, no contest, or nolo contendere to, a misdemeanor or a felony. (*Id.* at 27). Okwo answered no. (*Id.* at ¶ 5.8). Okwo alleges that if, at the application stage, he had been asked about more than felonies, he would not have proceeded with the job application. (*Id.* at ¶ 5.2). Okwo also alleges that the employee information form that followed the conditional offer stated that he did not need to report "any conviction that has been sealed, expunged, statutorily eradicated, annulled, dismissed, dismissed under a first offender's law, pardoned by the Governor or which state law allow[ed] [him] to lawfully deny." (*Id.* at ¶ 5.6).

PreCheck followed its standard procedures in using Okwo's personal identifiers, including his full name, physical address, social security number, and Texas driver's license number, to

search public record sources and verify Okwo's statements about his background and the absence of any criminal convictions.  (*Id.* at ¶ 5.8).  PreCheck located a record of a felony charge against Okwo filed in Harris County, Texas.  The charge in Cause No. 1593301, filed on June 4, 2018, was for "Assault Family Violence-2nd Offender," and stated in relevant part:

> IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:
>
> Before me, the undersigned Assistant District Attorney of Harris County, Texas, this day appeared the undersigned affiant, who under oath says that he has good reason to believe and does believe that in Harris County, Texas, OGOCHUKWU J OKWO, . . . on or about August 5, 2017, did then and there unlawfully, intentionally, and knowingly cause bodily injury to Mellodiemolly Gibson-Okwi . . . a member of the Defendant's family, by throwing liquid bleach into the Complainant's face and eyes.
>
> It is further presented that before the commission alleged above, the Defendant, on February 8, 2010, in the County Criminal Court at Law No. 5 of Harris County, Texas, in Cause No. 1636879, was convicted of Assault-Family Member which was committed against a member of the Defendant's family.

(*Id.* at ¶ 6.8.1).  The final disposition of Cause No. 1593301 was "dismissed."  (*Id.* at ¶ 6.8.5).  As to the 2010 charge, Okwo alleges that he had been placed on community supervision under deferred adjudication, and after completion, that charge was dismissed.  (*Id.* at ¶¶ 6.8.3–6.8.5).  PreCheck included information about the charge in Cause No. 1593301 in its report to Houston Methodist, including that it was "dismissed."  (*Id.* at ¶ 6.7).  In the report, PreCheck stated that it had searched for a record of any punishment against Okwo and found none, cautioning "that a lack of identifiers on either the sanctions record or provided by [the] applicant may result in PreCheck reporting 'No Sanctions or Matches Found.'"  (*Id.*).

Okwo alleges that when Houston Methodist receives a report from PreCheck, it uses a criminal background matrix "to assess whether the applicant . . . is an unacceptable risk to its

3

workforce and patients," but that Okwo had no felony conviction to which the criminal background

matrix could apply.  (*Id.* at ¶ 4.3; *id.* at 25).  On November 20, 2020, Houston Methodist and

PreCheck sent an email to Okwo warning him that it might take adverse action on his application

based on the information in the PreCheck report.  (*Id.* at ¶ 11.1).  On December 16, 2020, Houston

Methodist emailed Okwo the following adverse action notification:

> Based in whole or in part on information contained in that consumer
> report, we have denied your application for employment, are not
> promoting you, are terminating your employment, or are
> withdrawing your conditional offer of employment.

(*Id.*).  Okwo sent an email back to PreCheck and Houston Methodist protesting that the incidents

in the PreCheck report were not convictions based on trials, guilty pleas, pleas of no contest, or

pleas of nolo contendere, and requesting PreCheck to confirm that the report properly

characterized the 2018 charge.  (*Id.*).  PreCheck responded to Okwo by email on February 10,

2021, stating that its report accurately reflected that the charge was "dismissed."  (*Id.* at ¶ 11.2).

On February 12, 2021, PreCheck made a notation on the report to Houston Methodist stating that

the record had been confirmed.  (*Id.* at ¶ 11.4).  On February 22, 2021, Okwo sent a request by

priority mail to PreCheck for a copy of the "reinvestigation procedure used to determine the

accuracy and completeness of the information" in the PreCheck report.  He alleges that he received

nothing in response.  (*Id.* at ¶ 11.7).

Okwo alleges that in July 2021, he discovered that Houston Methodist had received the

PreCheck report.  He believes the report led Houston Methodist to "interpret" the charge in Cause

No. 1593301 as a felony conviction and caused Houston Methodist to rescind his offer of

employment.  (*Id.* at ¶ 11.8).  Okwo alleges that PreCheck and Houston Methodist violated various

provisions of the Fair Credit Reporting Act; that PreCheck libeled him; and that Houston

Methodist violated Title VII of the Civil Rights Act.   Both PreCheck and Houston Methodist move to dismiss the amended complaint.   Okwo has responded.

## II.     The Legal Standards

"The filings of a *pro se* litigant are to be liberally construed, . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"   *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019) (emphasis and alterations in original) (citation and internal quotation marks omitted).   But "pro se plaintiffs must still plead factual allegations that raise the right to relief above the speculative level."   *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (per curiam) (citation omitted).

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted."   FED. R. CIV. P. 12(b)(6).   Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."   FED. R. CIV. P. 8(a)(2).   "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.* (citing *Twombly*, 550 U.S. at 556).   "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."   *Id.* (quoting *Twombly*, 550 U.S. at 556).

"A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co*., 920 F.3d 890, 900 (5th Cir. 2019).

## III.    Analysis

### A.    Count I

Okwo alleges that PreCheck and Houston Methodist violated 15 U.S.C. § 1681d(d)(3) of the Fair Credit Reporting Act by negligently or willfully procuring or causing to be prepared a consumer investigative report, which Houston Methodist interpreted as reporting that Okwo had a felony conviction. Section 1681d(d)(3) of the Fair Credit Reporting Act provides:

> Except as otherwise provided in section 1681k of this title, a consumer reporting agency shall not furnish an investigative consumer report that includes information that is a matter of public record and that relates to an arrest, indictment, conviction, civil judicial action, tax lien, or outstanding judgment, unless the agency has verified the accuracy of the information during the 30-day period ending on the date on which the report is furnished.

15 U.S.C. § 1681d(d)(3).

6

Houston Methodist argues that Okwo has not pleaded a claim against it under this section because he has not alleged facts that Houston Methodist was a "consumer reporting agency." Under the Act, "consumer reporting agency" means

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).  The court previously held that Okwo had not alleged facts showing that Houston Methodist was a consumer reporting agency.  Okwo's amended complaint does not allege additional facts that would support a claim that Houston Methodist "regularly engages in whole or in part in the practice of assembling or evaluating . . .  information on consumers for the purpose of furnishing consumer reports to third parties."

As to PreCheck, there are no allegations to support Okwo's conclusory statement that PreCheck did not verify the report within 30 days after furnishing it.  Okwo agrees that PreCheck's report correctly stated that the charge against him had been dismissed.  When Okwo inquired about the report with PreCheck in February 2021, PreCheck quickly rechecked the report, confirming that the report correctly described the charge as "dismissed."  These complaint allegations do not support an inference that PreCheck failed to timely verify its report.

Count I is dismissed as to both Houston Methodist and PreCheck.

B.    Count II

Okwo alleges that Houston Methodist violated 15 U.S.C. § 1681b(b)(2)(A) of the Fair Credit Reporting Act by failing to make a "clear and conspicuous disclosure" to Okwo before it obtained PreCheck's consumer report for employment purposes, and that PreCheck violated §

7

1681b(b)(1)(A) by negligently or willfully furnishing a report when Houston Methodist had not complied with the disclosure requirements.

    The relevant provisions of § 1681b state:

> **(b) Conditions for furnishing and using consumer reports for employment purposes**
>
> > **(1) Certification from user**
> >
> > A consumer reporting agency may furnish a consumer report for employment purposes only if--
> >
> > > (A) the person who obtains such report from the agency certifies to the agency that--
> > >
> > > > (i) the person has complied with paragraph (2) with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable; and
> > > >
> > > > (ii) information from the consumer report will not be used in violation of any applicable Federal or State equal employment opportunity law or regulation; and
>
> . . .
>
> > **(2) Disclosure to consumer**
> >
> > > **(A) In general**
> > >
> > > Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless--
> > >
> > > > (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b).

Okwo acknowledges that Houston Methodist provided to him the following disclosure:

> ## DISCLOSURE REGARDING BACKGROUND INFORMATION
>
> Houston Methodist The Woodlands Hospital . . . may obtain information about you from a consumer reporting agency made in connection with your application for employment . . . . Thus, you may be the subject of a "consumer report" and/or an "investigative consumer report" which may include information about your character, general reputation, personal characteristics, and/or mode of living, and which can involve personal interviews. These reports may contain information regarding your credit history, criminal history, social security verification . . . . You have the right, upon written request made within a reasonable time after receipt of this notice, to request disclosure of the nature and scope of any investigative consumer report.

(Docket Entry No. 27 at 28). Okwo admits that this disclosure was timely, that he believed Houston Methodist certified to PreCheck that it had made the disclosure, that Okwo signed the consent form, and that he made no request for further disclosure of the nature and scope of the investigative consumer report. (*Id.* at ¶¶ 6.1–6.6). Okwo has alleged facts showing that Houston Methodist did follow the disclosure requirements and that PreCheck was aware that the disclosure was made.

To the extent that Count II is based on 15 U.S.C. § 1681b, it is dismissed as to both Houston Methodist and PreCheck.

Okwo alleges in the alternative that PreCheck violated § 1681k(a)(1) of the Fair Credit Reporting Act. Under § 1681k(a)(1),

> A consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and

9

> reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall--
>
>> (1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or
>
> . . .

15 U.S.C. § 1681k(a).  But Okwo does not allege facts that could show that PreCheck failed to follow this procedure.  Okwo alleges that on November 20, 2020, Houston Methodist and PreCheck emailed him a "pre-adverse notice" that they were "considering taking action in whole or in part based on information in [the PreCheck] report."  (Docket Entry No. 27 at ¶ 11.1).  Okwo has failed to allege facts supporting an inference that PreCheck failed to give notice under 15 U.S.C. § 1681k(a).

In the alternative, Okwo argues that PreCheck was negligent, careless, reckless, or willful in preparing a report that could be interpreted as stating that he had been convicted of a felony, and by including what Okwo argues was a misleading statement that "a lack of identifiers on either the sanction record or provided by your applicant may result in PreCheck reporting 'no sanctions or matches found.'"  Okwo does not identify what section of the Fair Credit Reporting Act or other law this would violate, and the complaint allegations do not support his claim.  The report accurately stated that the charge had been dismissed.  The complaint allegations do not support an inference that a report stating that a criminal charge had been dismissed is misleading as to whether that charge was dismissed.  Nor do the allegations support an inference of negligence or recklessness in a consumer reporting agency telling a report recipient that the report could be incomplete if the agency did not have all the identifiers necessary to search the public records.

Count II is dismissed as to both Houston Methodist and PreCheck.

**C.    Count III**

Okwo's Count III is unclear, but it appears to be stated against only PreCheck.  It states:

> 15.2 This complaint arises out of the negligent, reckless and or unlawful conduct of Defendant PreCheck and the willful conduct of its compliance officers and employees wherein the compliance officers verified as accurate the public record in Report #542905 which Defendant Houston Methodist had earlier interpreted, and based on adverse employment decision, as a felony conviction.

> 15.3 Defendant PreCheck also negligently, carelessly, recklessly, and or unlawfully failed to have or enforce reasonable investigation policies and procedures, train or adequately train and/or supervise its compliance officers in the reinvestigation of Report #542905.

(Docket Entry No. 27 at 20).  Based on other parts of Okwo's complaint, it appears that he is

asserting violations of 15 U.S.C. § 1681e, 1681k(a)(2), and 15 U.S.C. § 1681i of the Fair Credit

Reporting Act.

Under § 1681e,

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b).  Under § 1681k(a)(2),

> A consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall--

> . . .

> (2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date.  For purposes of this paragraph, items of public record relating to

11

arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

15 U.S.C. § 1681k(a).  Section 1681i provides, in part:

> (1) Reinvestigation required
>
> > (A) In general
> >
> > Subject to subsection (f) and except as provided in subsection (g), if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.
>
> . . .
>
> (6) Notice of results of reinvestigation
>
> > (A) In general
> >
> > A consumer reporting agency shall provide written notice to a consumer of the results of a reinvestigation under this subsection not later than 5 business days after the completion of the reinvestigation, by mail or, if authorized by the consumer for that purpose, by other means available to the agency.
> >
> > (B) Contents
> >
> > As part of, or in addition to, the notice under subparagraph (A), a consumer reporting agency shall provide to a consumer in writing before the expiration of the 5-day period referred to in subparagraph (A)--
> >
> > > (i) a statement that the reinvestigation is completed;

(ii) a consumer report that is based upon the consumer's file as that file is revised as a result of the reinvestigation;

(iii) a notice that, if requested by the consumer, a description of the procedure used to determine the accuracy and completeness of the information shall be provided to the consumer by the agency, including the business name and address of any furnisher of information contacted in connection with such information and the telephone number of such furnisher, if reasonably available;

(iv) a notice that the consumer has the right to add a statement to the consumer's file disputing the accuracy or completeness of the information; and

(v) a notice that the consumer has the right to request under subsection (d) that the consumer reporting agency furnish notifications under that subsection.

(7) Description of reinvestigation procedure

A consumer reporting agency shall provide to a consumer a description referred to in paragraph (6)(B)(iii) by not later than 15 days after receiving a request from the consumer for that description.

15 U.S.C. § 1681i(a).

Okwo has failed to allege how PreCheck failed to reinvestigate and update his report. As Okwo states in his response, "[t]he facts complained of . . . specify . . . that Plaintiff Okwo disputed the accuracy and completeness of report 5429025 whereupon PreCheck reinvestigated and thereafter verified report 5429025 as accurate, complete and up to date." (Docket Entry No. 32 at 4). This does not support an inference that PreCheck violated the reinvestigation requirements.

Okwo did allege that he requested a description of the procedures used to determine the accuracy and completeness of the information, as required by 15 U.S.C. § 1681i(a)(7), and did not receive the description or a copy of the procedures. However, Okwo has failed to allege how this

13

resulted in damages, given that the report accurately reported that Okwo's felony charge was dismissed.  Even if Okwo had received a copy of the procedures from PreCheck, that would not have affected Houston Methodist's actions.  *See Shimon v. Equifax Info. Servs. LLC*, 431 F. Supp. 3d 115, 122 (E.D.N.Y 2020) ("[T]he penalties accompanying violations of § 1681i fall away where those purposes have not been compromised and the accuracy of the disputed information confirmed."); *Thomas v. Equifax Info. Servs., LLC*, No. 1:18-cv-0143, 2019 WL 948996, at *2 (D. Colo. Feb. 27, 2019) ("[I]n the absence of inaccurate information, a description of the reinvestigation serves no purpose.").

Count III is dismissed.

### D.    Count IV

Okwo alleges that PreCheck violated 15 U.S.C. § 1681h of the Fair Credit Reporting Act by furnishing false information in a consumer report, with malice or willful intent to injure a consumer.

15 U.S.C. § 1681h(e) states that:

> no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e).  This section does not provide an independent cause of action.  Instead, it is an express limitation on state-law defamation and negligence claims.  *See Young v. Equifax Credit Information Services, Inc.*, 294 F.3d 631, 638 (5th Cir. 2002) ("The [Fair Credit Reporting Act]

preempts state law defamation or negligent reporting claims unless the plaintiff consumer proves 'malice or willful intent to injure' him.").

Okwo asserts a libel claim against PreCheck under § 73.001 of the Texas Civil Practice and Remedies Code.  Section 73.001 provides that:

> [a] libel is a defamation expressed in written or other graphic form that tends to blacken the memory of the dead or that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural defects of anyone and thereby expose the person to public hatred, ridicule, or financial injury.

Okwo has failed to allege what in PreCheck's report was defamatory, let alone that it was done with malice or intent to injure.  Okwo does not allege in his amended complaint a state negligence or defamation claim against Houston Methodist, but even if he did, he has not alleged facts supporting an inference that Houston Methodist acted based on false information, or with malice or intent to injure by taking into consideration Okwo's reported criminal record

Count IV is dismissed against PreCheck.

### E.    Count V

Okwo alleges that Houston Methodist violated Title VII of the Civil Rights Act of 1964 by withdrawing, or causing the withdrawal of, the employment offer.  He alleges the following facts in support of this count:

> 12.1    Title VII of the Civil Rights Act as amended prohibits employment discrimination based on race, color, sex, or national origin.  Defendant Houston Methodist's HR32 (Non-Discrimination Policy) as well as HR08 (Equal Employment Opportunity Policy) prohibit discrimination on grounds of gender identity, sex, race, color, national origin, disability, or age.
>
> 12.2 By and through the acts and practices described in paragraphs 4 to 12, Houston Methodist violated Title VII of the Civil Rights Act

as amended as well as its HR32 Non-Discrimination Policy and
HR08 Equal Employment Opportunity Policy.

. . .

12.11 Defendant Houston Methodist further alleges that in
approximately late December 2020 or early January 2021, Houston
Methodist selected a black, Nigerian female for the Medical
Technologists/Medical Laboratory Scientist position.

(Docket Entry No. 27).

The court previously ruled that Okwo's initial complaint had not pleaded facts that could
show direct evidence that he was discriminated against on the basis of race, color, or national
origin, and that it had not pleaded facts showing a prima facia case.  To state a prima facie case of
discrimination using circumstantial evidence, Okwo must plead facts showing that: (1) he is a
member of a protected class; (2) he was qualified and applied for the job; (3) Houston Methodist
rejected him for the job despite his qualifications; and (4) he was treated less favorably than other
similarly situated applicants outside the protected group.  *McCoy v. City of Shreveport*, 492 F.3d
551, 556 (5th Cir. 2007).

 Okwo's amended complaint states that he believes he was discriminated against because
he is black and from Nigeria.  (Docket Entry No. 27 at ¶ 12.9).  He admits in his response that a
black, Nigerian female got the job he wanted.  (Docket Entry No. 32 at 9–10).  Okwo fails to allege
that the person who got the job was less qualified than he was for the position.  *See Chhim v. Univ.
of Tex. at Austin*, 836 F.3d 467, 471 (5th Cir. 2016) (per curiam) ("Chhim pleads no facts that
suggest the applicant hired by the University was less qualified than Chhim or was similarly
situated.").

Okwo has failed to state a claim for discrimination against Houston Methodist.  Okwo's
Title VII claims are dismissed.

**IV.     Conclusion**

Houston Methodist's and PreCheck's motions to dismiss, (Docket Entry No. 28, 30), are granted.   No claims remain.   Because Okwo was already permitted leave to amend and failed to cure identified pleading deficiencies in his first amended complaint, further amendment would be futile and the dismissal is with prejudice.   Final judgment is separately entered.

SIGNED on August 4, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge